THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

RAILROAD LAW — BOARD OF RAILROAD COMMISSIONERS. The provision of the Railroad Law (L. 1890, ch. 565, § 161) that the board of railroad commissioners may recommend repairs and changes upon any railroad in the state, if in their judgment, " after a careful personal examination of the same," it shall appear necessary, should not be so narrowly or technically construed as to prevent the board from availing themselves of the expert or general knowledge of an inspector employed by it, in a case where, in a proceeding to compel the erection by a railroad company of a freight depot at a certain place, it appears that the board caused a personal inspection of the premises to be made through its inspector, but did not adopt his report and reserved to themselves the power of independent action in the premises, where the question was as to whether a depot at

another place was so situated as to meet the demands of shippers at the place in question, and if not, as to whether the volume of freight shipments over the railroad to and from such place was sufficient to justify the erection of the proposed depot; under such circumstances, the failure to make a personal examination of the premises does not affect the jurisdiction of the board to act.

*People* v. *Delaware & Hudson Canal Co.*, 32 App. Div. 120, affirmed.

(Argued December 6, 1900; decided January 22, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 22, 1898, affirming a judgment of Special Term awarding a peremptory writ of mandamus requiring the defendant to forthwith erect a freight station at the village of West Troy (now city of Watervliet).

The facts, so far as material, are stated in the opinion.

*Lewis E. Carr* for appellant. The recommendation of the board of railroad commissioners cannot be upheld and enforced, because it appears upon its face that the commissioners did not, in making it, act or proceed in obedience to the provisions of the statute, as no personal examination was ever made by them. (L. 1890, ch. 565, § 161; *Newton* v. *Bronson*, 13 N. Y. 587; *Grinnell* v. *Buchanan*, 1 Daly, 538; *Lewis* v. *Ingersoll*, 1 Keyes, 347; *People ex rel. Loughran* v. *Board R. R. Comrs.*, 158 N. Y. 421; *C. C. Bank* v. *Judson*, 8 N. Y. 254; *Dobson* v. *Pearce*, 12 N. Y. 156; *Roderigas* v. *E. R. Sav. Inst.*, 63 N. Y. 460; *Brown* v. *Mayor, etc.*, 3 Hun, 685.)

*John C. Davies*, Attorney-General (*Edward P. Coyne* of counsel), for respondent.

BARTLETT, J. We should be content to affirm this judgment on the opinion of the learned Appellate Division were it not for the fact that a point was argued at our bar which was not considered below.

As we approve and adopt the opinion of the Appellate Division, we shall confine our discussion to this one point.

The counsel for the appellant insists that the recommendation of the railroad commissioners cannot be upheld and enforced by the courts because it appears upon its face that they did not, in making it, act or proceed in obedience to the provisions of the statute.

The Railroad Law (Laws 1890, chap. 565) provides (§ 161), in regulating the powers and duties of the railroad commissioners, as follows : " If .in the judgment of the board, after a careful personal examination of the same, it shall appear that repairs are necessary upon any railroad in the state, or that any addition to the rolling stock, or any addition to or change of the station or station houses, or that additional terminal facilities shall be afforded, or that any change of the rates of fare for transporting freight or passengers or in the mode of operating the road or conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public, the board shall give notice," etc.

The contention of the appellant is that the commissioners failed to make the personal examination of the premises required by the statute and that this omission goes to the jurisdiction of the board to act.

It is further urged that this defect appears upon the face of the papers and could not be cured by oral proof or by any action on behalf of the People at any stage of the proceedings.

In support of this last suggestion reference is made to the report of the railroad commissioners, where it states as follows : " That prior to such hearing the board caused a personal inspection of the premises to be made through its inspector, the report of which is on file."

It is also argued that while it is doubtful if the report advises the erection of a freight depot, but, if so, it was not at the place fixed by the commission.

This narrow and technical construction of the statute ought not to prevail.

It was the obvious intention of the legislature to impose

upon the railroad commissioners the duty of a careful personal examination of the subject of repairs or changes upon which they were to act, and it would be unreasonable to hold that the commissioners could not avail themselves of the expert or general knowledge of inspectors they may employ. If repairs of the roadbed were under consideration the judgment of a disinterested trackmaster might be given weight, as the opinion of one unfamiliar with the practical operation of a railroad would be of little or no value. If curves were alleged to be dangerous or bridges insecure, the commissioners would naturally call in the civil engineer and the bridge builder. If additional rolling stock or depots were deemed necessary to secure the convenience and accommodation of the public, the commissioners would avail themselves of the knowledge and experience of unbiased and practical railroad men as calculated to aid them in reaching a just conclusion.

In the case before us neither the formal nor informal report of the inspector was adopted, thus showing that the commissioners did not delegate to the inspector any portion of their official duty, but reserved to themselves the power of independent action in the premises.

We do not mean to intimate that there may not be presented to the railroad commissioners a case where the statutory command of personal examination of the subject may not require them to visit and inspect the *locus in quo*, but in the case at bar no personal examination of the location of the freight depot was necessary.

The litigated question was whether the freight depot of the defendant at Green Island was so situated as to meet the demands of freight shippers doing business in West Troy, and if not, was the volume of freight shipments to and from West Troy over the railroad of the defendant sufficient to justify the commissioners in recommending that the defendant erect a freight depot in West Troy?

This question, under the alternative writ of mandamus, was tried before a learned referee who decided that the recommendation of the commissioner, that a freight depot should

be erected by the defendant in West Troy was just and reasonable.

The location of this freight depot, if it was to be built, was not a matter of dispute.

The learned counsel for the defendant states in his brief as follows: " It was conceded by the defendant that when the matter of a freight station at West Troy was first agitated, the officers of the company expressed a willingness to build, and bought some land on the south side of 19th street with the view of making use of it for that purpose, but when the matter was looked into more carefully it was found that the business that would be likely to go through a freight house would not justify the expense of building and maintaining it."

This fairly states the situation — the true issue.

The trial court has decided that the freight business will justify the building and maintaining of a freight house, and the railroad commissioners have recommended its erection upon the land already purchased for that purpose by the defendant.

The judgment and order appealed from should be affirmed, with costs, on the above opinion and the opinion below

Cullen, J. I concur in the affirmance of the judgment appealed from. I concede that the action of the board of railroad commissioners preliminary to the notice given to the railroad company must be in substantial compliance with the requirements of the statute or the recommendation of the board cannot be enforced. In my opinion, the statute does not require that there shall be a personal inspection by the members of the board of any physical objects. The statute reads: " § 161. Recommendations of board, when repairs or other changes are necessary.— If in the judgment of the board, after a careful personal examination of the same, it shall appear that repairs are necessary upon any railroad in the state, or that any addition to the rolling stock, or any addition to or change of the station or station houses, or that additional terminal facilities shall be afforded, or that any change of the

rates of fare for transporting freight or passengers or in the mode of operating the road or conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public," etc.  Now, what is "the same," a personal examination of which on the part of the commissioners is required by the statute?  Plainly the subjects which are subsequently enumerated — whether repairs are necessary, additions to the rolling stock, additions or changes in the station houses, changes in the rates of fare for freight or passengers or in the mode of operating the road or conducting its business.  Certainly some of these subjects, such as the rates of fare, are not the subject of inspection or perception through the senses.  In the case at bar, a view of the premises would throw but little, if any, light upon the question presented to the commissioners for determination.  The propriety of requiring the defendant to erect a freight station would depend principally on the amount of freight offered to it at the particular point for transportation, not on a single day or at the particular time the commissioners might visit the premises, but during the season or year.  Information as to these dominant facts could not be obtained by any inspection of the railroad.  The same is true as to the question of the adequacy of the rolling stock.  Looking at the engines and cars would throw no light on the question whether the company had provided sufficient rolling stock for its business.  In my opinion the personal examination required by the statute is not to be construed as meaning a personal inspection of physical objects, but a personal consideration by the commissioners of the subject-matter on which action is sought.

VANN, J. (dissenting).  I dissent, because the railroad commissioners failed to make a personal examination of the *locus in quo* as required by section 161 of the Railroad Law, which is as follows: "§ 161.  Recommendations of board, when repairs or other changes are necessary.— If in the judgment of the board, after a careful personal examination of the same,

it shall appear that repairs are necessary upon any railroad in the state, or that any addition to the rolling stock, or any addition to or change of the station or station houses, or that additional terminal facilities shall be afforded, or that any change of the rates of fare for transporting freight or passengers or in the mode of operating the road or conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public, the board shall give notice and information in writing to the corporation of the improvements and changes which they deem to be proper, and shall give such corporation an opportunity for a full hearing thereof, and if the corporation refuses or neglects to make such repairs, improvements and changes, within a reasonable time after such information and hearing, and fails to satisfy the board that no action is required to be taken by it, the board shall fix the time within which the same shall be made, which time it may extend. It shall be the duty of the corporation, person or persons owning or operating the railroad to comply with such decisions and recommendations of the board as are just and reasonable. If it fails to do so the board shall present the facts in the case to the attorney-general for his consideration and action, and shall also report them in its annual or in a special report to the legislature." (L. 1890, ch. 565, § 161.)

The power of the board to decide and recommend that the change in question should be made is derived wholly from the section quoted, and the Supreme Court has power to compel compliance, as authorized by the next section, only in case the board has proceeded according to the positive requirements of the statute in making the decision and recommendation. (Id. § 162.) The Supreme Court cannot act without a recommendation, and if the recommendation presented was made in violation of law, which is apparent from an inspection thereof, it is void and the court has no jurisdiction to issue its writ of mandamus to compel the railroad company to make the change.

The decision and recommendation in question, as presented

to the Supreme Court, showed upon its face that the inspection of the premises was made, not by the commissioners in person, but through an agent employed by them. The subject was not left to presumption, but the commissioners fairly stated in their decision that "the board caused a personal inspection of the premises to be made through its inspector, the report of which is on file." No other inspection is mentioned either in the decision or in the evidence, although the return to the alternative writ presented the issue and cast upon the People the burden of showing that a personal examination was made, if such were the fact.

The command of the statute with reference to a personal examination is not directory but mandatory. Two investigations are required before the court can compel the railroad company to make the proposed change. The first is wholly *ex parte*, while the second is after notice and an opportunity to be heard. The first, however, unless wholly negative in result, is the basis of an important decision, for, as the statute directs, "if, in the judgment of the board, after a careful personal examination of the same, it shall appear" that a change is necessary, "the board shall give notice and information in writing to the corporation of the improvements and changes which they deem to be proper." The decision thus made on the basis of a personal examination stands as the final decision of the board, and, if it is just and reasonable, the company must comply therewith, unless, at the hearing which may be had, it is able to "satisfy the board that no action is required to be taken by it." No further decision is required unless the board changes its mind, except to simply "fix the time within which" the improvement must be made.

The company is thus required to comply or contest, and, if it fails to do either, the Supreme Court can compel compliance to the extent that the recommendation is just and reasonable. Upon the application for this purpose "the findings of the board shall be presumptive evidence of the facts therein stated, and the recommendations of the board shall be deemed *prima facie* to be just and reasonable." (§ 162.) If the

47

company contests the matter, it has to meet a *prima facie* case already established by the *ex parte* investigation, and it has the burden of satisfying the board that its preliminary decision was wrong.

As the first investigation may lead to such important results, the method of investigation, so far as provided by statute, should be strictly complied with. The only method mentioned is " a careful personal examination," which, by express command of the statute, must be made, when practicable, as it was in this instance. While other sources of information may be, this source must be resorted to. When the statute says " personal examination " it means an examination made by the commissioners or some of them *in propria persona* of the place where the proposed improvement is to be made. The power exercised by them was delegated by the legislature, whose province it is, in the first instance, to require railroad companies to erect freight depots when deemed proper. This power was delegated with the express command that it should be exercised after a personal examination by the board. It thus became the duty of the commissioners or a majority of them to personally examine the *locus*. In the absence of express authority they could not delegate that power to another. *Delegatus non potest delegare.* When a power belonging exclusively to the state is delegated by the legislature to a board, the statute must be strictly construed and the method of procedure provided must be strictly followed. (23 Amer. & Eng. Encyc. p. 394.) In all jurisdictions this is so held of the power to condemn land or levy assessments, and the power under consideration is of the same summary character. The personal examination required by statutes of condemnation or by statutes authorizing local assessments cannot be delegated, and the board of railroad commissioners, as deputies of the state, could not assign to a deputy of their own the power of making the examination which the statute commanded them to make in person.

In making the decision or recommendation the commis-

sioners acted as judges. (*People ex rel. Loughran* v. *Board of Railroad Commissioners*, 158 N. Y. 421.) The personal examination was the evidence upon which they were commanded to act in making the decision, and no report of an agent, however skillful, could take the place of a personal view of the premises. They were to pass judgment upon what they saw, not upon what they heard from an inspector. Courts have repeatedly recognized the fact that it is impossible for one human being to so describe a locality or situation as to place in the mind of another as perfect a picture as can be derived from personal observation. Therefore, the power delegated by the board to its agent could not be as well exercised by him as by them, and the reason for the positive requirement of the statute thus becomes manifest. The omission to comply with the statute appeared upon the face of the decision, without which the Supreme Court has no jurisdiction. The commissioners had no jurisdiction to make their decision and their want of jurisdiction permeated the entire proceeding and deprived the Special Term of the power to issue the writ of mandamus. While this defect was substantially raised by the return to the alternative writ, as it went to the jurisdiction of both tribunals, it could be raised at any stage of the litigation. (*Chemung Canal Bank* v. *Judson*, 8 N. Y. 254.)

I think it was the duty of the commissioners to make the examination in person; that their decision, made without complying with this requirement, was void upon its face, and that it conferred no power upon the Supreme Court to act.

I, therefore, vote for reversal.

Gray and Martin, JJ., and Cullen, J. (in memorandum), concur with Bartlett, J., for affirmance; Parker, Ch. J., and Werner, J., concur with Vann, J., for reversal.

Order affirmed.