## Dwiggins Wire Fence Company v. Patterson.

(Decided October 19, 1915.)

### Appeal from Nelson Circuit Court.

1. Statutes—Sales in Bulk—Section. 2651a Kentucky Statutes—Constitutionality.—Section 2651a, known as the "Sales in Bulk Statute," is not unconstitutional on the ground that it unreasonably restricts the right of property or denies the equal protection of the laws.
2. Statutes—Sales in Bulk—Section 2651a Kentucky Statutes—Construction.—Section 2651a, known as the "Sales in Bulk Statute," is not restricted in its application to creditors whose goods actually pass by the prohibited sale, but applies to all creditors who may have sold the seller goods while the latter was engaged in that particular business, whether the goods be on hand at the time of the prohibited sale to the purchaser or not. The effect of the proviso with reference to a lien on any particular goods is to deny to the creditor a superior right to, or lien on, any of the goods, unless actually sold by the creditor and embraced in the stock of goods disposed of by the seller to the purchaser.

J. A. FULTON, OSSO W. STANLEY and E. N. FULTON for appellant.

J. F. COMBS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Affirming on cross-appeal and reversing on original appeal.

This appeal involves both the constitutionality and proper construction of section 2651a, Kentucky Statutes,

1915, known as the "Sales in Bulk Statute." The statute is as follows:

"1.   A sale by a merchant engaged in business in this State, of any portion of a stock of merchandise, otherwise than in the ordinary course of his trade, and in the regular and usual prosecution of his business, or a sale of an entire stock of merchandise in bulk by such merchant, shall be fraudulent and void, as against the creditors of the seller arising out of said stock of merchandise, unless the purchaser shall, at least five days before the consummation of the sale, in good faith, for the purpose of giving the notice herein required, make inquiry of the seller as to the names and places of residence, or places of business of each and all of the creditors of the seller, arising out of said business, and unless the purchaser, at least five days before the consummation of the sale, shall notify, or use reasonable diligence to cause to be notified, personally, each of the seller's said creditors, or shall deposit in the mail a registered letter of notice, postage prepaid, addressed to each of the seller's said creditors at his post office address, according to the information furnished by the seller of said proposed sale. Said information shall be by written statement by the seller and the purchaser shall not be responsible to any creditor not mentioned in said written statement. If the purchaser fail to give such notice as herein required, he shall hold the merchandise so purchased for the use and benefit of all the creditors of the seller, and shall be responsible to them for the fair value of such part thereof as he, the purchaser, may have transferred or conveyed to others. Nothing in this act shall be deemed or construed in anywise to authorize or validate any sale made with intent to delay, hinder or defraud creditors, purchasers or other persons, but such sales made with such intent shall be governed and controlled as provided by an act of the General Assembly, approved December 20, 1892, entitled, 'An act in relation to fraudulent and preferential conveyances, and entitled "Fraudulent and Preferential Conveyances," and the amendments thereto.'

"2.   All civil actions brought under this act shall be instituted within ninety days of the consummation of the sale.

"3.   The seller shall make full and truthful answer to each and all of the inquiries made of him by the purchaser, as required in section 1, and if such seller shall

knowingly and willfully make or deliver, or cause to be made or delivered, to said purchaser any false answer to such inquiries, or shall induce a sale by refusing to make answer to such inquiries, or by fraudulently claiming or pretending ignorance of the matters called for by such inquiries, then in each of said cases said seller shall be deemed guilty of a misdemeanor, and upon indictment and conviction thereof in the county where said acts are done, he shall be punished, in the discretion of the jury, by a fine of not less than one hundred nor more than five hundred dollars, or by confinement in the county jail not less than thirty days nor more than six months, or both so fined and imprisoned.

"4.  Nothing contained in this act shall apply to sales made under any order of a court, or to any sales made by executors, assignees, administrators, receivers, or any public officer in his official capacity, or by any officer of a court.

"Provided, That nothing in this act shall be so construed as to give any manfacturer, wholesale merchant or jobber any right to or lien on any merchandise or article in any stock of goods, except goods sold and delievered by such manufacturer, wholesale merchant or jobber."

The controversy arose in the following manner: J. W. Edwards owned and conducted a general merchandise store in the town of Boston in Nelson County. The Dwiggins Wire Fence Company sold to Edwards certain merchandise, for which Edwards, on January 2nd, 1914, executed to the company five promissory notes amounting to $200 each, payable in four, five, six, seven and eight months from date with six per cent. interest. Each of the notes provided that in case of default on any one of the notes, all should become due. In the month of April, 1914, Edwards sold and transferred his entire stock of merchandise to G. S. Patterson. Neither Patterson nor Edwards complied with the provisions of the above statute.  On May 20th, 1914, this action was brought by the Dwiggins Wire Fence Company against G. S. Patterson to recover of Patterson and subject the stock of goods to payment of plaintiff's debt. On the trial it appeared that of the wire fence sold by plaintiff to Edwards, the purchaser, Patterson, received only $213.17 worth. Of this he had disposed of $168.28 worth and still had on hand wire fence of the value of $44.89. It was stipulated that

the·value of the entire stock of merchandise exceeded
$1,000. The trial court adjudged that plaintiff recover
of Patterson the sum of $168.28 with interest, and further,
adjudged that plaintiff was entitled to recover, in kind,
the remainder of the wire fence of the value of $44.89.
So much of the petition as sought to subject the entire
stock of goods, or the value thereof, to the satisfaction of
plaintiff's claim, and so much of the petition as sought to
have the merchandise, with the exception of the wire on
hand at the time of the sale, held in trust for the benefit of
plaintiff and the other creditors of Edwards, was dis-
missed. From a judgment so entered, plaintiff appeals
and defendant Patterson prosecutes a cross-appeal.

The first question to be considered is the constitution-
ality of the statute. If resort be had to authority, it will
be found that there is an irreconcilable conflict in the
opinions of the courts. Similar statues have been enacted
in a number of states. In New York, Ohio, Indiana, Illi-
nois and Utah, they have been declared unconstitutional.
Wright v. Hart, 182 N. Y., 350, 2 L. R. A. (N. S.), 338,
75 N. E., 404, 3 A & E. Ann. Cas., 263; Miller v. Crawford,
70 Ohio St., 207, 71 N. E., 631, 1 A. & E. Ann. Cas., 558;
McKinster v. Sager, 163 Ind., 671, 68 L. R. A., 273, 106
Am. St. Rep., 268, 72 N. E., 854; Off v. Morehead, 20 L.
R. A. (N. S.), 167, 235 Ill., 40, 85 N. E., 264; Block v.
Schwartz, 27 Utah, 387, 65 L. R. A., 308, 101 Am. St. Rep.,
971, 76 Pac., 22, 1 A. & E. Ann. Cas., 550. On the other
hand, statutes of like import have been held valid in
Mississippi, Massachusetts, Connecticut, Tennessee,
Washington, Georgia, Michigan, Minnesota, Pensylvania
and Oklahoma. Moore Dry Goods Co. v. Jas. H. Rowe,
et al., 97 Miss., 775, 53 So., 626; John P. Squire & Co.
v. Tellier, 185 Mass., 18, 102 Am. St. Rep., 322, 69 N. E.,
312; Young v. Lemieux, 79 Conn., 434, 65 Atl., 436, 20 L.
R. A. (N. S.), 160; Walp v. Mooar, 76 Conn., 515, 57 Atl.,
277; Neas v. Borches, 109 Tenn., 398, 97 Am. St. Rep.,
851, 71 S. W., 50; McDaniels v. J. J. Connelly Shoe Co.,
30 Wash., 549, 60 L. R. A., 947, 94 Am. St. Rep., 889, 71
Pac., 37; Jacques & T. Co. v. Carstarphen Warehouse Co.,
131 Ga., 1, 62 S. E., 82; Spurr v. Travis, 145 Mich., 721,
116 Am. St. Rep., 330, 108 N. W., 1090, 9 A. & E. Ann.
Cas., 250; Thorpe v. Pennock Merchantile Co., 99 Minn.,
22, 108 N. W., 940, 9 A. & E. Ann. Cas., 229; Wilson v.
Edwards, 32 Pa., Super. Ct., 295; Feingold v. Steinberg,
33 Pa. Super. Ct., 39; Williams v. Fourth Nat. Bank, 15

Okla., 477, 2 L. R. A. (N. S.), 334, 82 Pac., 496, 6 A. & E. Ann. Cas., 970; Noble v. Fort Smith Wholesale Grocery Co. (Okla.), 127 Pac., 14, 46 L. R. A. (N. S.), 455. In Wisconsin and Maryland the courts did not consider the question of constitutionality, but assumed the acts to be valid. Fisher v. Herrmann, 118 Wis., 424, 95 N. W., 392; Hart v. Roney, 93 Md., 432, 49 Atl., 661.

Those courts holding such acts unconstitutional proceed on the theory that they unduly restrict the right of property and constitute class legislation of the most vicious kind. To sustain their contention, the burdens imposed by the acts are set out at great length and a long record is given of the classes of business men to which they do not apply. With all due respect for their views, it seems to us that the objections which they raise to the constitutionality of such acts are matters relating to questions of expediency rather than of power. If there be one question of constitutional law well settled, it is that the courts will not declare an act unconstitutional unless plainly so, and, in case of doubt, will resolve the doubt in favor of its validity. Eubank v. Richmond, 226 U. S., 137, 42 L. R. A. (N. S.), 1123; Johnson v. Higgins, 3 Met., 566; Henderson v. State, 137 Ind., 552, 36 N. E., 257, 24 L. R. A., 469, 6 R. C. L., 73. From time out of mind the state has had power to regulate the acquisition, enjoyment and disposition of property. Crowley v. Christensen, 137 U. S., 86, 34 U. S. (L. Ed.), 620. The prevention of fraud is equally within the power of the state. People v. Freeman, 242 Ill., 373, 90 N. E., 366, 17 Ann. Cas., 1098; People v. Wagner, 86 Mich., 594, 49 N. W., 609, 24 A. S. R., 141. And the state may protect the people against the consequences of fraud. Hawker v. People of New York, 170 U. S., 189, 18 S. Ct., 573, 42 U. S. (L. Ed.), 1002. Police regulations are not rendered invalid by the fact that they may incidentally affect the exercise of some right guaranteed by the constitution. State v. Gurry, 121 Md., 534, 88 Atl. 546, 47 L. R. A. (N. S.), 1087. It is only where such regulations are unreasonable, or constitute an unjustifiable impairment or abridgment of the right, that the courts will declare them invalid. Henderson v. New York, 92 U. S., 259; People v. Budd, 117 N. Y., 1, 22 N. E., 670, 15 A. S. R., 460, 5 L. R. A., 559. The plain purpose of the enactment was to prevent fraudulent sales. The necessity for such legislation grew out of the fact that many merchants in failing circum-

stances would dispose of their entire stock of goods, pocket the money and leave their creditors without remedy. To avoid such consequences, the statute provides that sales in bulk shall be fraudulent and void unless certain things are done. In order that the purchaser may escape the consequences of the statute, all that he has to do is to make inquiry of the seller as to the names and places of residence, or places of business, of each and all of the creditors of the seller, arising out of said business, and, at least five days before the consummation of the sale, notify them, either personally or by registered letter, of the intended sale. The seller must furnish the information in writing and the purchaser is not responsible to any creditor not mentioned in the written statement. All that the seller is required to do is to make true answers to the inquiries of the purchaser under the penalty of fine and imprisonment, if he knowingly and wilfully make false answers, or induce the sale by refusing to answer, or by fraudulently claiming or pretending ignorance of the matters inquired about. In other words, the only effect of the statute is to postpone the consummation of the sale for at least five days and to require of the seller and purchaser certain duties which would, perhaps, not consume more than two or three hours' time. From a practical standpoint, there is no ground for distinction between the statutes declaring prohibited sales void and fraudulent and those making them presumptively fraudulent. The effect is the same. A sale is merely voidable at the option of the creditor, who pursues his remedy within the statutory period. Manifestly, a seller without debts can make a valid sale. A seller who is indebted can make a valid sale after the required notice, or he may validate a sale made without notice by paying or otherwise satisfying his creditors. Considering these privileges in connection with the requirements of the statute, it seems to us that the restrictions imposed fall far short of constituting an unreasonable interference with the right of property.

But it is argued that the act is discriminatory, in that it applies only to merchants and excludes from its operation all other sellers. As a matter of fact, however, the offending class is composed principally of merchants. The classification, therefore, is not an arbitrary one, but, being based on a well-grounded distinction, is altogether reasonable and does not violate the provisions of the

Fourteenth Amendment to the Federal Constitution or any provision of our own Constitution. We may further add that the Supreme Court of the United States has held that similar statutes were not violative of the Fourteenth Amendment to the Federal Constitution. Kidd, Dater & Price Co. v. Musselman Grocer Co., 217 U. S., 461, 54 U. S. (L. Ed.), 839; Lumieux v. Young, 211 U. S., 489, 53 U. S. (L. Ed.), 295.

The next question concerns the propriety of the trial court holding that plaintiff was confined in its recovery to the amount of its property which passed into the hands of Patterson by virtue of the sale. It is insisted that this is the correct construction of the statute, because the word "creditors" is qualified by the clause "arising out of said stock of merchandise," and that this position is further fortified by the following language of the last section of the act:

"Provided, That nothing in this act shall be so construed as to give any manufacturer, wholesale merchant or jobber any right to or lien on any merchandise or article in any stock of goods, except goods sold and delivered by such manufacturer, wholesale merchant or jobber."

In our opinion, this view of the statute is entirely too narrow. It expressly provides that the purchaser who fails to comply with the statute shall hold the merchandise so purchased "for the use and benefit of all the creditors of the seller" and shall be responsible to them for the fair value of such part thereof as he, the purchaser, may have transferred or conveyed to others. It is clear, we think, that the qualifying words "arising out of said stock of merchandise" are used synonymously with the words "arising out of said business," and that the statute embraces all creditors who, during the continuance of the particular business, sold the seller any part of his stock of merchandise, whether on hand at the time of the sale to the purchaser or not; the liability of the purchaser in no event to exceed the value of the merchandise purchased. The manifest purpose of the act was to provide that the entire stock of merchandise so purchased should be held in trust for all such creditors of the seller, to be distributed in proportion to their respective claims. In case the purchaser disposed of any part of the stock, he was to be personally liable. The effect of the proviso at the end of the fourth section of the act is

merely to provide that no creditor should have any superior right to or lien on any merchandise or article in any stock of goods sold, unless such merchandise or articles of goods were sold by the creditor to the seller and were embraced in the stock of goods or merchandise disposed of by the seller.

Judgment affirmed on cross-appeal and reversed on original appeal for proceedings consistent with this opinion.