## Denton v. White, et al.

.(Decided March 9, 1928.)

### Appeal from Warren Circuit Court.

1. Fraudulent Conveyances.—Sales in bulk statute (Ky. Stats., sec: 2651a-1 et seq.) makes it duty of buyer to procure from seller list of his creditors, and to withhold enough of purchase price to secure such creditors, failing which creditors have right to go against property transferred.

2. Sales.—Buyer, whose duty it is to procure from seller a list of creditors and withhold enough of purchase price to satisfy them,. under sales in bulk statute (Ky. Stats., sec. 2651a-1 et seq.), cannot rely on lien, if any, arising against property, where seller agrees to transfer property free from incumbrances, as ground. either for rescission or for counterclaim, especially where seller promptly paid creditors when their bills fell due, discharging liens,. if any.

3. Exchange of Property.—Where parties placed higher valuation on tanks in invoice, but valuation was laid aside, and they traded by an exchange of property, regardless of price or value, party was entitled to be reimbursed only for what missing tanks were really worth.

4. Exchange of Property.—Where parties at time of negotiating contract invoiced goods at certain prices and placed value of two tire agencies at $500 each, but in making trade they laid valuation aside and traded by an exchange of property, regardless of price or value, party could not recover damages, even if tire agencies were without value, where the other party transferred such agencies as he had, and tire companies acquiesced therein.

5. Indemnity.—Where contract for exchange of vulcanizing plant. provided that lease of store should be transferred to one acquiring vulcanizing plant, and he went into possession of property, duty to pay rent, and cost of electric current devolved on him, and, where the other party paid same, the former became indebted to him for rent paid.

FINN & SIMS and W. R. GARDNER for appellant.

A. J. OLIVER and B. S. HUNTSMAN for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In July, 1926, the appellant and the appellee entered into a contract whereby the appellee was to convey to the appellant a farm of 91 acres he owned in Allen county, Ky., and the appellant was to convey to the appellee therefor a vulcanizing plant and

the equipment of an oil and gasoline service station, which the appellant owned and operated in connection with a tire business he was conducting in Bowling Green. In addition to the vulcanizing plant and this equipment, appellant was also to transfer the agencies under which he was then selling the Gates and Miller automobile tires to the appellee, and to pay the latter $250 in cash. By this same contract, it was further provided that the appellant was to sell to the appellee, and the latter was to buy from the former, the tires and other stock of merchandise which appellant then had in his store, at the invoice price of the same. This contract was later duly executed. The invoice of the tires and stock of merchandise came to $1,828.50. The appellant, instead of paying the appellee the $250 in cash called for by the contract, gave the latter credit by this amount on the invoice price of the stock, leaving the net sum of $1,578.50 due from the appellee to the appellant.

When the appellee came to convey the farm in Allen county to the appellant, it was discovered that there was a $600 mortgage on it, which it was not convenient for the appellee to remove, and so the appellant agreed to assume it. This assumption by the appellant made the appellee indebted to the former on this trade in the sum of $2,178.50. The appellee executed his three notes to the appellant in the aggregate sum of $2,100, secured by a mortgage on the vulcanizing plant and equipment which the appellant had conveyed to him. The appellee agreed to pay the appellant the balance of $78.50 in cash. The appellee then took possession of the store and business, and ran it until the early part of August, when he brought suit against the appellant to rescind the contract and conveyances above mentioned on the ground of fraud. A few days after the appellee filed his suit, the appellant filed this suit on his three notes executed by the appellee. Later the appellant filed an amended petition, setting up certain items which he claimed the appellee owed him in addition to the three notes, and which we shall mention more in detail hereafter. By agreement the two suits were consolidated.

In his answer to the suit instituted by the appellant, the appellee abandoned his claim for a rescission, and in lieu thereof asserted a counterclaim in the sum of $2,500 on account of a breach of the contract arising out

of the fraud which he had relied on as basis for his suit for a rescission. On final hearing the lower court adjudged that there was no fraud in the transaction, gave the appellant a judgment for the notes on which he had sued, dismissed his amended petition, and gave the appellee judgment on his counterclaim in the sum of $1,100. From so much of the judgment as dismissed his amended petition, and as awarded the appellee a judgment on his counterclaim, the appellant appeals.

At the time the parties were negotiating their contract, the appellee and the appellant invoiced the vulcanizing plant and the equipment which were to be the subject of the trade. The appellant dictated to the appellee, who wrote them down on a piece of paper, the items of the invoice and the value which he (the appellant) placed on these items. The total value of these items was $3,050. Underneath this total there was written, "$500 each for Gates and Miller tire agencies." In the list of the equipment appeared this item: "$600, tools and underground tanks." The evidence shows that the appellant had bought this plant and equipment in the preceding November for the sum of $2,500, and that he had thereafter added to the plant a boiler and other equipment, bringing the total cost of this plant to him up to $2,660. It thus appears that, aside from the estimate put on the Gates and Miller tire agencies, the value of the plant and equipment as itemized approximated very closely to what the plant and equipment had cost the appellant. The evidence also shows that at the time of this trade the appellee's farm was not worth, at the outside, in excess of $1,500.

The fraud upon which the appellee relied as a basis for his claimed rescission, and later for his counterclaim, was based on three grounds: First, that the appellant had agreed that the property was to be transferred to him free from incumbrances, and that it was not; secondly, that appellant represented to him that the item "tools and underground tanks" covered two underground tanks on the outside of the building, and ten oil tanks inside the building, whereas appellee got only one underground tank and two inside oil tanks; and, thirdly, that the appellant did not own the Gates and Miller agencies and had no right to transfer them.

So far as the first ground is concerned, there is absolutely no merit in it. At the time the transfer under

this contract took place, about half of July had expired. The appellant at that time owed about $700 of current bills, which were not payable until the 10th of the following month. These bills were later paid when they fell due by the appellant. It seems to be the appellee's idea that under our sales in bulk statute (Kentucky Statutes, sec. 2651a-1 et seq.) there was a lien on all this property running to the current creditors of the appellant, for which reason he could not and did not transfer this property free from lien. As a matter of fact no creditor ever asserted any claim against any of this property. Under the sales in bulk statute, if any lien arose against this property, it was due to the appellee's own fault, because this statute makes it the duty of the vendee to procure from the vendor a list of his creditors, and to withhold enough of the purchase price to secure such creditors, failing which the creditors have a right to go against the property transferred. Thus we see that, if any lien arose against this property, it arose because the appellee failed to procure from the appellant a list of his creditors, and failed to withhold enough of the purchase price to satisfy them. Plainly this was due to no fault of the appellant, and the appellee cannot rely upon it as a ground either for rescission or for a counterclaim. Further, as the appellant promptly paid these creditors when their bills fell due, any lien which arose against the property was discharged, and appellee has suffered no damage thereby.

So far as the second ground is concerned, although the appellant disputes it, the evidence sustains the finding of the trial judge that the contract included two outside underground oil tanks and the oil tanks inside the building which appellee claimed, but never got. The evidence, however, shows that the value of these missing tanks, both outside and inside, was not in excess of $100. The appellee makes some contention that the value of $600 placed on the item in the invoice covering these "tanks and tools," shows that the parties agreed between themselves on a much higher valuation than the evidence discloses the missing tanks were worth, since the major part of that item was for the tanks, and not the tools. But the appellee himself, in testifying, admitted that when he and the appellant came to trade, after this invoice had been taken, the valuation was laid aside, and they traded by an exchange of property regardless of

price or value. It is therefore obvious that the appellee is entitled to be reimbursed only for what the missing tanks were really worth, and, as stated, this worth does not exceed $100. Appellant concedes and is willing to pay that amount, if the court is of opinion, as it is, that the contract covered such missing tanks.

But the main contention of the appellee is that gross fraud was practiced by the appellant with reference to his purported transfer of the Gates and Miller tire agencies; the appellee insisting that the appellant had no right to transfer such agencies. The answer to this contention is that the appellant did transfer these agencies to the appellee and this transfer was acquiesced in by the tire companies; so that the appellee got exactly that for which he had contracted. Appellee does not contend that it was represented to him that appellant had any contract for any agency for any specific length of time, or that the agencies could not be revoked by the tire companies whenever they wished. All that can be said is that the appellant agreed to transfer to the appellee such agencies as he had. This he did, and appellee got them. Whether they were of any value or not is beside the point, because, as stated, the appellee himself admits that the parties did not trade on the basis of any represented values. There was, then, no merit in this contention of the appellee. It therefore results that the trial court erroneously awarded the appellee $1,100 on his counterclaim, and that it should have awarded him only $100.

Just why the lower court dismissed the appellant's claims set up in the amended petition we are utterly at a loss to understand. These items were the $78.50 which appellee in the adjustment of the notes agreed to pay in cash, as we have set out above; $35 for rent of the store building during the time the appellee occupied it, and which appellant, who was still liable on the lease, after the transfer had to pay; $20 for electric current used by appellee in the store building while he occupied it, and which appellant, under his contract with the lighting company, had to pay; $12.50 for some oil and gasoline; $15 for bills due appellant, and which appellee collected and retained; and $275.74 for tires ordered by appellant before the trade, but delivered after the transfer, and which appellee agreed to take and pay for. As he never did, appellant, who had ordered the tires, had to pay for them. These items total $436.74, and are subject to a

credit, which appellant concedes, of $74.50, being the amount appellant owed appellee for some merchandise.

The evidence shows appellee owes appellant every one of these items. As to the $78.50, he makes and can make no contention. It was the balance due on the adjustment of the notes. As to the rent, the contract provided that the lease of the store was to be transferred to the appellee. He went into possession of the property, and occupied it for about one month. The duty to pay the rent devolved upon him, and when he failed to do so, and appellant had it to pay, because the landlord had never released him from the lease, appellee became indebted to the appellant for the rent thus paid for him. As the appellee used the electric current, he must pay for it. As the appellant had to pay it, under the contract the lighting company had for the use of electric current for this store building, the appellee must reimburse him. The other items speak for themselves. It results, therefore, that the court, in addition to the judgment he gave the appellant on the notes, should have also awarded him a judgment on the items set up in the amended petition in the sum of $362.24.

The judgment of the lower court is therefore reversed, with instructions to enter a judgment in favor of the appellant in the sum of $2,100, with interest at the rate of 6 per cent. per annum from July 24, 1926, until paid, and in the further sum of $362.24, with interest at the rate of 6 per cent. per annum from September 20, 1926, until paid, subject to a credit in favor of the appellee in the sum of $100, with interest thereon at the rate of 6 per cent. per annum from July 24, 1926, until paid.