## Sandige v. Stephens.

(Decided Feb. 2, 1934.)

COMBS & COMBS for appellant.

HILL & HOBSON and E. P. HILL, Jr., for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On November 13, 1931, the appellee, Stephens, sold to the appellant, Sandige, a cleaning and pressing business and plant, the latter consisting of a boiler, one drying tumbler, one clarifying system, two washers, two pressers, two Chevrolet trucks, one Singer sewing machine, one set of plumbing tools, one motor and drive shaft. The sale price was $7,000, to be paid as follows: $1,300 on December 13, 1931, and $100 each succeeding month thereafter until the purchase price was paid. To secure the payment of the purchase price, Sandige executed a mortgage on the cleaning and pressing plant sold him and pledged certain securities he owned. He

took possession of the business and plant on the date of sale, and continued to operate them through the preparation and trial of this case in the lower court. He defaulted in the payment of the $1,300 note due to the fact that there was a default in the payment of one of the securities which he had pledged. On January 16, 1932, he brought this suit in the Floyd circuit court for a rescission of the contract of sale, relying on several grounds, all of which he later abandoned save one, and that is, an alleged failure of title to a portion of the personalty covered by the contract. By his answer, Stephens traversed the allegations of the petition, pleaded affirmatively that, while the property was in the possession of Sandige, there had been such a change in condition of it as to render it impossible for Sandige to place Stephens in statu quo, and averred affirmatively that Sandige was estopped to rely on the alleged defect in title because he knew all about the condition of the title at the time he bought the property. Subsequent pleadings completed the issues. After proof had been introduced by both sides, the court declined to adjudge a rescission of the contract, awarded Stephens judgment for the sale price of the property, but subjected this sale price by a credit in the sum of $205 as the market value of three items of personal property included in the contract of sale as to which the court found a failure of title. From that judgment this appeal is prosecuted.

Appellant insists that this contract of sale was an indivisble contract and one for an entire cleaning and pressing plant; that under the Uniform Sales Act, now section 2651b-1 et seq. of our Statutes, and especially section 13 thereof (section 2651b-13), there is in the case of every sale of personal property an implied warranty of title on the part of the seller, and that by section 2651b-69, where there has been a breach of warranty by the seller, the buyer has certain elections, one of which is to rescind the contract and return the goods to the seller and recover the price or any part thereof which has been paid, and, if the price has not been paid, to cease to be liable for that price. It may be said in passing that this same section of the act provides that the right of rescission shall not be available to the buyer if he is unable to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer, providing

the deterioration or injury of the goods is not due to the breach of warranty. If it is, the deterioration or injury does not prevent the buyer from returning the goods to the seller and rescinding the sale. The three pieces of property covered by the contract of sale which the court found Stephens had no title to were a boiler, a smokestack, and a tank, part of the clarifying system. About a year or so before Stephens sold this plant to Sandige, Stephens, being in need of a boiler, was on the lookout for one. Along the highway some 30 or more miles from Prestonsburg where this pressing plant was located Stephens found sitting by the side of the road an old boiler, the tubes of which were rusted out and the fire box of which was about gone. This boiler had been left in the locality by some construction company which appears to have gone into the hands of a receiver, and thereafter no one seems to have taken any interest in the boiler. Some negotiations of a nebulous character between Stephens and the construction company through a local intermediary proving abortive, Stephens one night went over to the place where the boiler was, loaded it on a truck, and took it to his plant. There, by an investment of some $150 in the replacement of tubes and a fire box and other repairs, he fitted the boiler for use in his pressing plant. Since that time until the present no one has questioned his right to the boiler or disturbed him or Sandige in the possession thereof.

The smokestack was acquired in this fashion: A road construction company building a concrete road in cold weather had taken a long joint of corrugated iron pipe usually used for culverts and had heated gravel in it to keep the concrete from freezing. After it had completed its road work, it sold the pipe to a nearby farmer who seems to have left it lying by the side of the road. It is conceded that it was of small value. Stephens, in need of a smokestack and seeing this pipe by the side of the road, to all appearances abandoned, loaded it on a truck and took it to Prestonsburg and made a smokestack out of it. Although he had had it for over a year, no one had disturbed him in his possession of it or claimed title to it. Neither has Sandige been disturbed in its possession. The tank of about 125 gallons capacity was a part of an old street sweeper belonging to the city of Prestonsburg. It seems that for a number of years this sweeper, after the brushes

thereof had been worn out by the city, had been allowed to rest in undisturbed peace on the city dump and was covered with debris and garbage. The rims of the wheels had shrunk from the tires, the tongue was gone, and the platform upon which the operator of the machine stood had rotted out. But the tank could still be used. Stephens saw the mayor of the town and one or two councilmen, and they told him it was all right with them if he wanted to go down there and take the tank and put it in his plant. It was not of great value. However, there was no formal action by the city council selling or giving this tank to Stephens. After getting this expression of opinion from the mayor and the councilmen, Stephens did go down to the dump and get the tank and put it in his plant.

The tank has been used by Stephens and Sandige for over two years without objection by any one. At least so far as the smokestack and boiler are concerned, there is a grave question as to the propriety of the court's decision that these articles had not been abandoned by their former owners and that Stephens did not have title to them at the time he sold his plant to Sandige. But, for the purpose of this opinion, we may agree that the decision of the trial court as to this matter was right. Sandige in his brief frankly concedes that he is trying to get out of his bargain and is seizing on the alleged failure of title to these three pieces of personal property as an excuse. The evidence satisfactorily discloses that, after Sandige got a hold of the property, he used the automobiles in such fashion as that one of them is now totally incapacitated and the other much damaged. Due to the fact that he chose to work around one of the tanks which held gasoline with a pipe in his mouth, there was an explosion which did some damage of no little proportion. Further, although the business seems to have been in a satisfactory if not flourishing condition when transferred to Sandige, it is now, as he himself admits, very poor. Part of this decrease in business was due to causes over which Sandige had but little control, the depression and competition, but part of it is satisfactorily shown to have been due to the poor work Sandige turned out from his plant. The record is perfectly clear that at the time Sandige tried to rescind this contract the property was not in substantially the same condition as when he received it. Therefore he had no right under the Uniform Sales Act

to rescind his contract of purchase. He was necessarily relegated to a claim for damages for that part of the property as to which title failed. Cf. Denton v. White, 223 Ky. 640, 4 S. W. (2d) 412; Kentucky Statutes, sec. 2651b-69. He does not complain that full value was not allowed him for the three articles above described. It is almost certain that Sandige has not only gotten this credit, but will also never be disturbed in the possession of these three articles. But be that as it may, as Stephens is not complaining and Sandige has gotten full credit, the lower court's judgment is obviously correct, and should be, and is, affirmed.