## FIRST NAT. BANK OF LOUISVILLE, KY.

v.

## WALLING et al.

Court of Appeals of Kentucky.

Feb. 12, 1954.

Andrew W. Duncan, Richard C. Oldham, Louisville, for appellant.

J. P. Karem, Fred J. Karem, Louisville, for appellees.

SIMS, Chief Justice.

This controversy involves the ownership of certain tavern and restaurant furniture and fixtures upon which appellant bank had an execution levied as the property of Ronald C. Walling. J. P. Karem claimed a mortgage executed to him by Walling gave him a lien superior to the bank's execution lien on the property owned by Walling and that the balance of the property upon which the levy was made belonged to him and not to Walling. The case was heard before the judge without a jury and

judgment was rendered for Karem, and the bank appealed.

The proof shows that in June or July 1946, Karem purchased the fixtures and equipment in Fairdale Inn from Minnie Griffin for $3,500 cash. Karem operated the place as a restaurant for a year or so until his manager, Loraine Rayhill, married. Karem then leased the fixtures and equipment to Walling, who through his wife first operated it as a restaurant, and he paid Karem $50 a month rent for the fixtures. Later Walling put a bar in the building which he called a tavern, and Walling owned the bar or tavern fixtures and ran the bar while his wife ran the restaurant. Walling became indebted to Karem and on September 19, 1949, mortgaged to him the bar fixtures "on the premises at the R. C. Tavern at Fairdale, Ky.," for $2,763. The mortgage specifically described the bar fixtures and the bank admits this mortgage lien is superior to its execution lien.

The bank obtained judgment in the Jefferson Circuit Court on December 5, 1949, against Walling for $2,456.77. Execution issued thereon and was levied by the sheriff December 9, 1949, "on the right title and interest of Ronald C. Walling" in two different taverns he operated. After making the levy the sheriff left the property in the custody of Walling's wife.

Here we are concerned only with the furniture and fixtures in the tavern and those in the restaurant which Karem had rented to Walling. With the execution levied on these fixtures, Karem and Walling sold them to Dennis and W. H. Mitchell for $4,300, of which $2,000 was paid cash to Karem and the balance was evidenced by a note payable to "Ronald C. Walling and/or J. P. Karem."

Through a payment by Walling of $100 and the proceeds of an execution sale of property not here involved, the bank's judgment was reduced to $1,675.96. The bank filed an amended petition naming Karem and the Mitchells as defendants, setting out the credits on its judgment and averring that all the property sold by Karem and Walling to the Mitchells was covered by the execution lien, and garnished all sums in the hands of Mitchell going to Walling. This pleading further averred that all the defendants knew of the execution lien, but despite that fact Karem prepared an affidavit (pursuant to the Bulk Sales Act) to the effect that Walling was the sole owner of the furniture and fixtures "now located on the premises of the 'R. C. Tavern', at Fairdale" and that same was free from all debts and liens, and Walling executed this affidavit. The Mitchells' answer averred they held no funds going to Walling. Karem's answer, after denying the material averments of the amended petition, alleged he was the owner of the equipment and fixtures in the restaurant which was sold to the Mitchells, and that he held a mortgage for $2,763 on the tavern fixtures owned by Walling, which gave him a lien thereon superior to the bank's execution lien.

The bank's chief ground for reversal is that since Karem prepared and had Walling execute the affidavit, that all the property sold the Mitchells belonged to Walling and was free from encumbrance, Karem is now estopped from himself claiming title to the restaurant fixtures. Also, the bank insists that the sale of the restaurant and tavern fixtures violated KRS 434.210, making it a felony to fraudulently dispose of personal property upon which there is a statutory lien.

The affidavit referred to was made in conformity with the Bulk Sales Act, KRS, Chapter 377. The purpose of this Act was to provide that the entire stock of merchandise purchased should be held in trust for all creditors who had sold merchandise to the seller, to be distributed in proportion to their respective claims. Dwiggins Wire Fence Co. v. Patterson, 166 Ky. 278, 179 S.W. 224; Riedling v. Ross, 213 Ky. 187, 280 S.W. 923; Denton v. White, 223 Ky. 640, 4 S.W.2d 412.

Karem testified that Walling was insolvent at the time the Mitchells purchased these fixtures; that he (Karem) had a mortgage on the tavern fixtures owned by

Walling which far exceeded their value and in order to sell the business as a whole, Karem had to sell the tavern and restaurant fixtures as one property, and to assure and secure the Mitchells, the purchasers, Karem had Walling execute the affidavit. Karem testified, as did Walling, that the latter had no interest in the sale as Walling was hopelessly insolvent. The purchasers evidently knew some of the property they were buying was owned by Karem as the notes for the deferred payments were made to "Ronald C. Walling and/or J. P. Karem." Be that as it may, the bank with reason cannot complain of Karem changing his position as there was an ample sum represented by the deferred payments to protect its execution lien after the satisfaction of Karem's mortgage. And the Mitchells are not saying Karem perpetrated a fraud upon them by causing Walling to execute the affidavit. The proof overwhelmingly shows that the tavern fixtures were worth nothing like enough to satisfy Karem's mortgage and that the restaurant fixtures belonged to Karem.

For Karem to be estopped, his change of position must have misled the bank and caused it to act to its detriment in relying upon his action in causing Walling to execute the affidavit. Clark v. Fergerson, 231 Ky. 36, 20 S.W.2d 1013; Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d 232; Kentucky Home Mut. Life Ins. Co. v. Leitner, 302 Ky. 789, 196 S.W.2d 421. Had the bank been able to prove Walling owned the furniture and fixtures sold the Mitchells which were worth over and above the mortgage lien against same, it could have collected its debt out of the deferred payments the Mitchells still owed Karem when the bank's amended petition was filed. Nor was the bank prejudiced in the circumstances

appearing in this record by any violation of the criminal statute, KRS 434.210, by the execution of the affidavit showing Walling to be the sole owner of the property sold the Mitchells. There was nothing to prevent the bank from instituting criminal proceedings under this statute, albeit such would not have enabled it to collect its debt.

The trial judge found that at the time of the levy of the execution all the fixtures and equipment in the restaurant belonged to Karem and they had a value of $3,500 when he purchased them. The court further found that Karem's mortgage of $2,763 on the fixtures and equipment Walling owned in the tavern was superior to the bank's execution lien. As it is admitted the fixtures and equipment in the tavern were so small in value as not to satisfy the mortgage lien against them, the chancellor made no mistake in dismissing the bank's amended petition.

■ It is not necessary to enter into a discussion of the authorities cited by the bank as they relate to notice of its execution lien to Karem, Walling and the purchasers, and to the question of estoppel against Karem. These authorities are not controlling here for the reason above expressed. While there is abundant proof to support the trial judge's findings, yet if we had a doubt of the correctness of his judgment thereon, we could not reverse it for the reason that a jury was waived. Where the law and the facts are submitted to the court, his findings of fact had the same weight as the findings of a properly instructed jury. Civil Code of Practice, § 331; Rybolt v. Futrell, 296 Ky. 158, 176 S.W.2d 269.

The judgment is affirmed.